DAVID EISENBERG
331 N. First Avenue
Suite 108
Phoenix, Arizona 85003
Arizona State Bar No. 017218
Telephone: (602) 452-2932
Email: david.eisenberg@azbar.org

Counsel for Defendant Laura C. Gillette

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br>Plaintiff,<br>v.<br>Laura C. Gillette,<br>Defendant. | CR 08-0036-03-PHX-PGR<br>**DEFENDANT LAURA GILLETTE'S OBJECTIONS AND RESPONSES TO DRAFT PRESENTENCE REPORT** |

Defendant Laura C. Gillette, by and through undersigned counsel, respectfully submits the Defendant Laura C. Gillette's Objections and Responses to the Presentence Report. Except for one guideline calculation, this response is not in the nature of objections to the United States Probation Office's ("USPO") computation of the Defendant's sentencing guideline range. Rather, for the most part it sets forth observations concerning how some of the background in this case has changed since the USPO met with the Defendant and how specific offense characteristics that went into the range's computation have created an overly harsh guideline result.

1. Non-Calculation Comments

a. Page 2:

The Defendant's current age is 47.

The Defendant's maiden name was Stowe, but she has never used the last name of Pierce. That name was her step-mother's maiden name.

b. Culpability Assessment, ¶ 18:

The USPO's summary of the offense conduct is essentially correct. However, it should be noted that the Defendant's husband, Bryan Gillette, was not the plant manager for Ultra Health Products ("UHP"). He was, however, the vice-president.

c. Culpability Assessment, ¶ 19:

The USPO has noted that the Defendant was an "average" participant in criminal activity that occurred. In this case, there were three individual, charged defendants. In the ranking of which of these three persons was the most culpable, the evidence shows that it was not Laura Gillette. Indeed, among the three, she did the least.

The discovery does, however, show that other persons at various times were aware of what occurred and, depending on how one interprets the information disclosed, these persons may also have participated in the events. Nonetheless, to the defense's knowledge, no one else in this case has been charged.

d. Personal & Family Data, ¶¶ 43 & 45:

The Defendant's brother, John Reginald Stowe, committed suicide in 1978, not 1998.

Ms. Gillette has improved her contacts with siblings, since the death of her husband. Except for Jane Jones, the Defendant is now in close contact with all the family members mentioned in this paragraph. In addition, she has also re-established contact with her biological and step mothers, and recently has become close with her son, Eric, whom she has contact with on a daily basis.

e. Mental and Emotional Health, ¶ 48:

Following the death of her husband, the Defendant has received prescribed medications. These are: diazepam for panic attacks and trazodone for depression and anxiety and as a sleep aid. In addition, the Defendant attends bi-weekly meetings of Survivors of Suicide ("SOS"), a mutual support group.

f. Financial Condition: Ability to Pay, ¶¶ 58-59:

There is no longer any debt on the vehicle. She no longer pays for health insurance. The house in which she is currently living is now up for a "short sale." The Defendant anticipates having to move out of the house in a matter of weeks.

2. Guideline Calculation Comments:

a. Specific Offense Characteristic, ¶ 26:

If there is a calculation in this guideline offense that is open to conjecture, it is the amount of receipts from the sale of Vinarol. To counsel's knowledge, there is little in the way of documentation that substantiates the $1,000,000 amount set forth as gain to the defendants. Certainly the Defendant received very little of whatever came in, as she was paid $800 per week as a salaried employee of UHP.

Thus, the number of levels by which this part of the guideline should be enhanced runs more in the realm of the unknown than the quantifiable. Accordingly, the defense objects to the 16 points that the USPO has assigned to this characteristic.

b. Specific Offense Characteristic, ¶ 28:

There is no doubt that the actual contents of the product Vinarol were subject to regulatory oversight. The Defendant does not object to the inclusion of these points in the calculation. Nonetheless, as the USPO notes, there have been no reported "health related incidents or injuries" from the sales of this product. (PSIR, p. 16.) This does not mitigate the inclusion of the characteristic, but it does put into some perspective that the defendants in this case were not selling such controlled substances as heroin, which ultimately adversely affects nearly all who take it.

3. Penalty

The USPO has recommended probation for the Defendant. It also recommends no fine, as she does not have the ability to pay one. (PSIR, p. 16.) A review of her personal balance sheet and income flow shows that, indeed, Ms. Gillette has a negative net worth and more monthly expenses than income.

Respectfully submitted this 8th day of March, 2010.

*s/ David Eisenberg*
DAVID EISENBERG
Counsel for Laura C. Gillette

I hereby certify that on March 8, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Sexton, Esq.
Assistant U. S. Attorney

*s/ David Eisenberg*
David Eisenberg