DAVID EISENBERG
331 N. First Avenue
Suite 108
Phoenix, Arizona 85003
Arizona State Bar No. 017218
Telephone: (602) 452-2932
Email: david.eisenberg@azbar.org

Counsel for Defendant Laura C. Gillette

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR 08-0036-03-PHX-PGR |
|---|---|
| Plaintiff, | |
| v. | **SENTENCING MEMORANDUM** |
| Laura C. Gillette, | |
| Defendant. | |

Defendant Laura C. Gillette, by and through undersigned counsel, respectfully submits the Defendant's Sentencing Memorandum, which is offered in support of the Defendant's request that the Court accept the plea agreement in her case and the recommendation of the United States Probation Office ("USPO") as to the sentence to be imposed.

**A. Sentencing Criteria**

The following addresses the criteria in 18 U.S.C. § 3553(a) to be considered in imposing a sentence. The memorandum covers those criteria below that are most relevant to Ms. Gillette.

These sentencing criteria are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; [1]  (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal

---

[1] The subcategories for this factor include the need for sentencing to (A) reflect the seriousness of the offense, to promote respect for the law and provide just punishment; (B) afford adequate deterrence; (C) protect the public from further crimes by the defendant; (D) provide the defendant with needed educational, medical or other treatment.

records and have been found guilty of similar crimes; and (7) the need to provide restitution to victims.

**B. Application of the Criteria to Ms. Gillette**

1. <u>The Nature and Circumstances of the Offense; The Defendant's History & Characteristics</u>

   a. <u>Nature & Circumstances of the Offense</u>

The USPO's presentence investigation report ("PSIR") sets out the nature of the criminal activities in this case. (PSIR, ¶¶ 5-16.) However, there are two important observations that should be made with respect to Laura Gillette's participation: compared to Tim Isaac (and even her late husband, Brian Gillette). [2]  Laura Gillette's active participation in acquiring and selling Vinarol is far less than Mr. Isaac's, and the amount of gain that she took from these activities has no relationship to the amount of sales generated by Bionate International, Inc. ("BII".)  Her connection with BII led to a paid salary of $800.00 per week.

The PSIR takes the position that the gain to the defendants and the assorted businesses through which they operated was greater than $1,000,000.00.  This in spite of the parties' statements in their responses to the draft presentence investigation report that gain in this case cannot be accurately calculated due to the lack of documentation to support the conclusion necessary to make the finding as to loss.  (See Doc. 104, p. 3 [Defendant's Objections and Responses to Draft Presentence Investigation Report]; Doc. 105, p. 1 [United States' Response to Presentence Investigation Report, et al.].) Indeed, as the Government succinctly and quite fairly points out concerning the case agent's estimate that the offense conduct lead to revenues "well in excess of $1,000,000, "[w]hile that statement may be true, the agent does not have sufficient foundation to apply that amount of loss to defendant Gillette.  The illegal operation kept incomplete and insufficient books and records from which to glean overall sales and profits.  The agent also does not possess sufficient bank records from which to extrapolate either sales or profits."

---

[2] The PSIR covers this in its Culpability Assessment at paragraphs 17-19.

2

1   Yet, the USPO's explanation for adhering to the loss amount does not meet the expected
2 burden of proof.  The presentence report provides that "[a]s stated at paragraph 26 , the case agent
3 informed the proceeds taken in by the conspiracy was in excess of $1,000,000.  It is believed the
4 case agent is in the best position to estimate loss or gain in the offense." (PSIR, p. 20.)  With due
5 respect to the USPO and its desire to draft a meaningful PSIR for the Court's use, this is not a
6 position warranted by the evidentiary standard and is particularly problematic with respect to
7 Laura Gillette.  *See, United States v. Showalter*, 569 F.3d 1150, 1159-60 (9th Cir. 2009) (noting
8 that the burden of proof to show an enhancement under the guidelines is a preponderance of the
9 evidence and that the sentencing court may not simply rely on factual averments in the presentence
10 report.)

11      b.   <u>Characteristics of the Defendant</u>

12   Ms. Gillette has no criminal history at all, with the exception of a bad check for which the
13 charge was ultimately dismissed and the check amount paid.  (PSIR, ¶¶ 36-38, 39.)

14   Moreover, pretrial services conducted a home inspection on August 4, 2009, and noted no
15 supervision issues.  (PSIR, ¶ 44.)

16   The USPO's recounting of the Defendant's personal and family history reflects a great
17 tragedy, followed by a reconnection with  family members.  The loss of her husband under the
18 circumstances set forth in the PSIR has certainly had a profound impact on her emotionally.
19 Fortunately, she has been able to re-establish ties with he sisters and son.  (PSIR, ¶¶ 41-46.)
20 Moreover, she has made the effort to attend a support group for the survivors of suicide, which
21 includes counseling.  (PSIR, ¶ 48.)

22   The Defendant's employment record shows a steady worker, who had sufficient skills and
23 ambition to become a legal secretary for private practitioners and the Attorney General's office.
24 (PSIR, ¶¶ 56, 57.)

25   Yet, financially, the Defendant has very little to show for her efforts.  As the financial
26 condition portion of the PSIR indicates, Ms. Gillette has no home of her own and a relatively low

27
28                                          3

level of income. She has outstanding debts of $28,000. She and her husband had filed for bankruptcy. (PSIR, ¶¶ 58-61.)

2. <u>The Need for the Sentence Imposed</u>

The individuals and companies involved in the distribution of Vinarol have been effectively removed from participating in any future violations of law relative to the manufacture and distribution of drugs as regulated by the Food and Drug Administration ("FDA"). In Ms. Gillette's case in particular, she has neither the desire nor the means to access the sources and commercial connections necessary to import Vinarol or any other unapproved drugs. The public will be protected by the conviction of the Defendant.

As the USPO has pointed out, "Given the nature of the present offense, along with the defendant's lack of criminal history, she does not appear to be a significant threat to the community, nor a risk to reoffend." (PSIR, p. 16.)

3. <u>Sentencing Range Established by the Guidelines</u>

This factor has been addressed above. The imprecise calculation for loss make the guidelines even more arbitrary than under the usual circumstances involving sentences for fraudulent-related conduct.

There have not been any reports of known victims due to the sale of Vinarol. (PSIR, ¶ 20, p. 6.) The defense recognizes that this does not reduce the need to police the sale of products that must be regulated, as required by the FDA. It does, however, stand in some contrast to the mathematical impact of the guidelines, since the Defendant has been allocated a total of six levels for victim-related matters: four levels for the 50 or more "victims" who purchased Vinarol and two points for consciously or recklessly disregarding the risk of death or serious bodily injury. (PSIR, ¶¶ 27, 28.) Nonetheless, the Defendant has not objected to the inclusion of these specific offense characteristics in the guideline calculation, since these characteristics do come within the guideline provisions for this offense conduct.

4

C. **Conclusion**

Based on the foregoing considerations, Laura Gillette respectfully requests that the Court accept the plea agreement and sentence her in accordance with its terms.

Respectfully submitted this 28th day of March, 2010.

          *s/ David Eisenberg*
          DAVID EISENBERG
          Counsel for Laura C. Gillette

I hereby certify that on March 28, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Sexton, Esq.
Assistant U. S. Attorney

*s/ David Eisenberg*
    David Eisenberg